# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**GARY L. ZEIGLER,**
**Claimant Below, Petitioner**

**FILED**
**February 27, 2024**
C. CASEY FORBES, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 23-ICA-440**       (JCN: 2022024379)

**DAVIS KITCHEN & TILE, LLC,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Gary L. Zeigler appeals the September 7, 2023, order of the Workers' Compensation Board of Review ("Board"). Respondent Davis Kitchen & Tile, LLC ("DKT") filed a response.[1] Mr. Zeigler did not file a reply. The issue on appeal is whether the Board erred in affirming the claim administrator's order, which rejected the claim.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Zeigler is employed by DKT; his job requires him to install kitchen and bathroom cabinetry and tiles. On June 19, 2022, Mr. Zeigler completed an Employees' and Physicians' Report of Occupational Injury. The physician's portion of the form was completed by Jason McNair, M.D., Mr. Zeigler's primary care physician, on June 28, 2022. Dr. McNair indicated that Mr. Zeigler suffered a right wrist scapholunate ligament dissociation due to chronic repetitive use of his right wrist in twisting motions.

On July 20, 2022, the claim administrator issued an order rejecting the claim as untimely. The claim administrator issued a corrected order on February 9, 2023, which recognized the claim as timely filed, but rejected the claim for lack of a causal connection between the diagnosis and Mr. Zeigler's employment. Mr. Zeigler protested both orders.

Relevant to this appeal, Mr. Zeigler has a prior history of hand and wrist pain, and related treatment. Mr. Zeigler was seen by Alysia Clarkson, FNP, on April 11, 2013, for complaints of neck pain, right hand pain, and right wrist pain, numbness, decreased range

---

[1] Mr. Zeigler is represented by J. Thomas Greene, Jr., Esq., and T. Colin Greene, Esq.  DKT is represented by Steven K. Wellman, Esq., and James W. Heslep, Esq.

1

of motion, and stiffness. Ms. Clarkson diagnosed tendinitis in the right wrist and recommended a tennis elbow strap for the right wrist.

Returning to the instant injury, on April 17, 2019, Mr. Zeigler was seen by Dr. McNair for right wrist pain that had been ongoing for months. Dr. McNair diagnosed right wrist pain and opined that it did not appear to be carpal tunnel or in a median nerve distribution. X-rays of the right wrist, performed on the same day, revealed mild radiocarpal degenerative narrowing and a slight abnormality of the scapholunate interval. Mr. Zeigler was seen by Linda Carol Jackson, M.D., on May 14, 2019. Dr. Jackson recommended an intra-articular injection of corticosteroids and a right wrist splint.

On June 9, 2020, Mr. Zeigler was seen by John Britt, M.D. Mr. Zeigler reported that he had been experiencing right wrist pain for two years and stated that he only felt minimal relief from a wrist splint and trigger point injections. Right wrist x-rays, performed on the same day, revealed scapholunate widening with dorsal tilting of the lunate. Dr. Britt diagnosed Mr. Zeigler with chronic right wrist pain and dorsal intercalated instability ("DISI") of the right wrist. Dr. Britt recommended an MRI of the right wrist. Mr. Zeigler underwent an MRI of his right wrist on June 14, 2020, revealing scapholunate dissociation, DISI of the right wrist with cortical signal changes, and synovial edema suggesting early changes of rheumatoid arthritis.

Mr. Zeigler followed-up with Dr. Jackson on June 29, 2020. Dr. Jackson diagnosed right wrist pain; scapholunate advanced collapse ("SLAC"), stage 2; and scapholunate ligament disruption. Dr. Jackson apprised Mr. Zeigler of his treatment options, which included activity modification and bracing, additional corticosteroid injections, and scaphoidectomy and intercarpal fusion. On August 21, 2020, Mr. Zeigler followed up with Dr. Britt. Dr. Britt recommended surgery, but Mr. Zeigler reported that he wanted to wait until after he retired to have surgery.

On December 21, 2022, Mr. Zeigler was deposed. Mr. Zeigler testified that he began working for DKT in 2018. He stated that his job duties include tiling, and remodeling kitchens and bathrooms. Mr. Zeigler denied any injuries to his wrist prior to his employment with DKT. Mr. Zeigler testified that his symptoms began after troweling and using his right wrist in a twisting motion on a particular large tiling job.

Jennifer Lultschik, M.D., examined Mr. Zeigler and issued a report dated May 2, 2023. Mr. Zeigler reported that he had been a tile installer since July 2018. Mr. Zeigler could not identify any specific injury or incident, but he recalled a large job setting tile and stated his pain began at home the evening after working on this particular job. Mr. Zeigler reported constant pain in the right wrist that is worse at night and after working, stabbing wrist pain with firm grasping, weakness in grip strength, tingling, numbness and pain at the radial distal forearm, and an occasional tremor in the right hand. Dr. Lultschik diagnosed Mr. Zeigler with SLAC, DISI, and median neuropathy of the right upper

2

extremity. Dr. Lultschik noted that SLAC is a progressive form of wrist arthritis that occurs secondary to a traumatic injury of the scapholunate. Dr. Lultschik could not find any scientific or medical literature to support repetitive use as a cause of SLAC, but, in the absence of trauma, other possible causes are rheumatoid arthritis, neuropathic diseases, or idiopathic causes. Dr. Lultschik noted that the presence of early rheumatoid arthritis was revealed on the June 14, 2020, MRI. Dr. Lultschik opined that DISI is a form of carpal instability and occurs in conjunction with disruption of the scapholunate ligament. Dr. Lultschik opined that because there was no acute injury or incident, Mr. Zeigler's conditions were more likely than not causally related to osteoarthritis or early rheumatoid arthritis, rather than his employment.

On September 7, 2023, the Board affirmed the claim administrator's order, which rejected the claim. The Board found that Mr. Zeigler failed to establish that his diagnoses are causally related to his employment. Mr. Zeigler now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, Mr. Zeigler argues that he sustained injury to his right wrist as a result of the repetitive twisting motions associated with troweling, tiling, and the installation of kitchen and bathroom cabinetry. Further, Mr. Zeigler argues that Dr. McNair has opined that his injury is causally related to his employment. Finally, Mr. Zeigler argues that he testified that he did not have issues with his wrist prior to the 2018 tiling job he has

described as the mechanism of injury, thus the presumption set forth in *Moore v. ICG Tygart Valley, LLC*, 247 W. Va. 292, 879 S.E.2d 779 (2022) should apply.[2][3] We disagree.

West Virginia Code § 23-4-1(f) (2021), provides:

[A] disease is considered to have been incurred in the course of or to have resulted from the employment only if it is apparent to the rational mind, upon consideration of all the circumstances: (1) That there is a direct causal connection between the conditions under which work is performed and the occupational disease; (2) that it can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment; (3) that it can be fairly traced to the employment as the proximate cause; (4) that it does not come from a hazard to which workmen would have been equally exposed outside of the employment; (5) that it is incidental to the character of the business and not independent of the relation of employer and employee; and (6) that it appears to have had its origin in a risk connected with the employment and to have flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction.

Here, the Board found that the weight of the medical evidence did not support finding a causal connection between Mr. Zeigler's diagnoses of SLAC and DISI in the right wrist and his employment. The Board noted that the only medical evidence indicating that

---

[2] In *Moore* the Supreme Court of Appeals of West Virginia held that:

A claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

*Moore* at 294, 879 S.E.2d at 781, syl. pt. 5.

[3] We note that Mr. Zeigler's application for benefits was filed as an occupational injury rather than an occupational disease/repetitive motion claim, however, this case has been argued primarily as a repetitive motion claim. Further, we note that if this case were to be considered as an occupational injury claim based on an injury date in 2018, Mr. Zeigler's application for benefits would be untimely.

4

Mr. Zeigler's diagnoses were occupational in nature was his application for benefits and no other medical evidence finds any causal connection. Thus, the Board found that Mr. Zeigler had failed to satisfy the six factors outlined in West Virginia Code § 23-4-1(f), as required to establish a cumulative repetitive use injury claim.

Upon review, we conclude that the Board was not clearly wrong in finding that Mr. Zeigler failed to establish a causal connection between his diagnoses and his employment due to the lack of medical evidence indicating a connection. Thus, the Board was not clearly wrong in finding that Mr. Zeigler failed to satisfy the six factors outlined in West Virginia Code § 23-4-1(f).

We find no merit in Mr. Zeigler's argument that the *Moore* presumption should apply due to his "uncontested" testimony that he did not experience symptoms prior to his onset of symptoms after a tiling job in 2018. Mr. Zeigler cites the Supreme Court of Appeals of West Virginia's holding in *Gration v. Contura Energy, Inc.*, No. 21-0949, 2023 WL 6127900 (W. Va. Sept. 19, 2023) (memorandum decision),[4] in support of his argument. We note that the claimant's injury in *Gration* was a spinal injury caused by an isolated fortuitous event rather than a claim for an injury caused by cumulative repetitive use. The Supreme Court has not extended the application of *Moore* to occupational disease or cumulative repetitive use injury claims; thus, we will decline to do so in the instant case. The fact remains that Mr. Zeigler has not established a causal connection between his diagnoses and his employment as required by West Virginia Code § 23-4-1(f).

Accordingly, we affirm the Board's September 7, 2023, order.

Affirmed.

**ISSUED:** February 27, 2024

**CONCURRED IN BY:**

Judge Charles O. Lorensen
Judge Daniel W. Greear

Chief Judge Thomas E. Scarr, not participating

---

[4] In *Gration,* the Supreme Court found that the presumption set forth in *Moore* was not rebutted by the claimant's preexisting symptoms because there was a five-year gap between prior medical treatment and the claimant's discrete new occupational injury. *Gration* at *3.